SRM

**WO**

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **Dushan Stephan Nickolich, II,**<br>Plaintiff<br>-vs-<br>**Dora B. Schriro, et al.,**<br>Defendant(s) | CV-05-2364-PHX-SMM (JI)<br><br>**ORDER** |

Under consideration is Defendants Greeley's and Schriro's Motion to Dismiss, filed January 4, 2006 (#17).

## A.  BACKGROUND

**Complaint** - Plaintiff commenced this action by filing his Complaint (#1) on August 8, 2005.  Plaintiff's Complaint named Defendants Greeley and Schriro, as well as Defendants Dr. McCauley, Officer Goldsmith, and Dr. John Trezise.  Each Defendant was named in their individual and official capacities.  (Complaint, #1 at 2A & 2B.)

Plaintiff's claims arise out of disputes over his mental health treatment while incarcerated in the Arizona State Prison.  In Count One, Plaintiff alleges that he suffered cruel and unusual punishment in March 2004, when he was denied mental health services. He further specifically alleges that Defendant Trezise refused Plaintiff treatment on May 5, 2004.  (Complaint, #1 at 4.)  In Count II, Plaintiff alleges that the failure to treat him is a violation of the Americans with Disabilities Act ("ADA").  (*Id.* at 5.)  In Count III, Plaintiff alleges that the failure to treat him is a violation of the Rehabilitation Act.  (*Id.*  at 6.)  In Count IV, Plaintiff alleges violations of due process when, on March 2, 2004, Defendant McCauley refused treatment.  (*Id.*  at 7.)  Plaintiff alleges that as a result of Defendants' actions, his mental status has deteriorated, he has gone on hunger-strikes,  and attempted

- 1 -

1  suicide several times.  (*Id.* at 5.)

2       In each count, Plaintiff acknowledges administrative remedies were available, and

3  asserts that he pursued the procedures to the highest level.  (*Id.* at 4, 5, 6, and 7.)  He seeks

4  injunctive relief (including transfer to the Arizona State Hospital for treatment),

5  compensatory and punitive damages, and attorneys fees and costs.  (*Id.* at 8.)

6       **Motion to Dismiss** - Service on Defendants McCauley, Goldsmith, and Trezise has

7  been returned unexecuted (*See* Order 10/5/5, #12; #6, 7, and 8.)  On January 4, 2006,

8  Defendants Greeley and Schriro filed the instant Motion to Dismiss (#17), asserting: (1)

9  Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation

10  Reform Act of 1996 ("PLRA"); (2) the Eleventh Amendment bars Plaintiff's claims for

11  monetary damages against the Defendants in their official capacity; (3) the ADA and the

12  Rehabilitation Act bar suits against persons in their individual capacities; (4) Plaintiff cannot

13  recover damages because he has not shown physical injury, as required by 42 U.S.C. §

14  1997e(e).  Accordingly, Defendants request that they be dismissed.

15       **Response** - Plaintiff responded (#21), arguing that he has exhausted administrative

16  remedies by filing an appeal with Defendant Schriro in inmate grievance case number A16

17  099 004.  Plaintiff appends as Exhibits copies of those grievances and appeals.  Plaintiff does

18  not address Defendants' other grounds for dismissal.

19       **Reply** - Defendants reply (#23) that Plaintiff's original grievance pertained to his

20  treatment at the Meadows Unit, in February through March 2004, which is the subject of his

21  Complaint, but his appeal to Defendant Schriro concerned his treatment in June 2004 at

22  ASPC's mental health unit, Aspen.

23  **B.  FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

24       Defendants argue that Plaintiff's claims must be dismissed because he has failed to

25  exhaust his available administrative remedies.

26       **Exhaustion Requirement** - Exhaustion of administrative remedies under the PLRA

27  is governed by 42 U.S.C. § 1997e(a).  This statute provides that "[n]o action shall be brought

28  with respect to prison conditions under section 1983 of this title, or any other Federal law,

1   by a prisoner confined in any jail, prison, or other correctional facility until such

2   administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This

3   language has been interpreted to require "that an inmate must exhaust [available remedies]

4   irrespective of the forms of relief sought and offered through administrative avenues." *Booth*

5   *v. Churner*, 532 U.S. 731, 741, n.6 (2001). Additionally, the Court should not "read futility

6   or other exceptions into statutory exhaustion requirements" where the statute provides for no

7   such exceptions. *See id.* The exhaustion requirement "applies to all inmate suits about

8   prison life, whether they involve general circumstances or particular episodes." *Porter v.*

9   *Nussle*, 534 U.S. 516, 532 (2002). A plaintiff must fully exhaust his administrative remedies

10   before filing a complaint. *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002).

11   "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the

12   proper remedy is dismissal of the claim without prejudice." *Wyatt*, 315 F.3d at 1120.

13   **Applicability to ADA and Rehabilitation Act Claims** - The exhaustion requirement

14   under 42 U.S.C. § 1997e(a) is not limited to prisoner civil rights suits under 42 U.S.C. §

15   1983. Rather, "exhaustion is now required for all 'action [s] ⋯ brought with respect to prison

16   conditions,' whether under § 1983 or 'any other Federal law.' " *Porter v. Tussle,* 534 U.S.

17   516, 524 (2002) (citations omitted); *Butler v. Adams*, 397 F.3d 1181 (9th Cir.  2005)

18   (applying PLRA exhaustion requirement to ADA claims). Accordingly, each of Plaintiff's

19   claims are subject to this exhaustion requirement, including his claims under the ADA and

20   the Rehabilitation Act.

21   **Standard for Granting Unenumerated Rule 12(b) Motion** - The failure to exhaust

22   administrative remedies under the PLRA is treated as a matter in abatement and is properly

23   raised in an unenumerated Rule 12(b) motion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119

24   (9th Cir.), *cert. denied*, 124 S. Ct. 50 (2003).  Exhaustion is an affirmative defense;

25   establishing exhaustion of administrative remedies under the PLRA is not a pleading

26   requirement or a jurisdictional prerequisite. *Id.* Therefore, the Defendants bear the burden

27   of proving that Plaintiff had available administrative remedies that he did not utilize. *Id*.;

28   *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). "In deciding a motion to dismiss for a

1    failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide

2    disputed issues of fact." *Wyatt,* 315 F.3d at 1119-20.

3        **Exhaustion of Available Administrative Remedies** - Plaintiff and Defendants agree

4    that Plaintiff had available to him the standard inmate grievance procedures under ADOC

5    Department Order 802.   Under those procedures, Plaintiff was obliged to pursue any

6    grievance all the way through an appeal to Defendant Schriro, the Director of ADOC.

7    (Motion, #17, Exhibit 1, Pinkstaff Affix. at 2, ¶ 5.)

8        The only dispute between the parties is whether Plaintiff's exhausted grievances

9    included the claims he now raises. Defendants contend that Plaintiff's Complaint in this case

10   concerns only the denial of treatment while housed in the Meadows Unit.  While they

11   apparently concede that Plaintiff exhausted his remedies through initial levels, they argue that

12   his grievance appeal at the final level was limited to challenging the quality of his treatment

13   following his transfer to the Aspen Unit.  (Reply, #23 at 2-3.)

14       In response, Plaintiff presents his Inmate Grievance Appeal to Director Schriro filed

15   July 14, 2004 in Case No. A16 099 004.  (Response, #21, Exhibits.)  In that appeal, Plaintiff

16   does not repeat his entire journey in pursuit of mental health treatment.  Rather, Plaintiff

17   appended to his appeal all of his prior submissions on the grievance and the responses, and

18   in the body of the grievance he posed objections to the responses made at the lower level by

19   Defendant Greeley, the Facility Health Administrator. (Response, #21, Exhibits, Grievance

20   Appeal at 2.)  Defendant Greeley had responded to Plaintiff's grievance that he could not

21   respond because Plaintiff's file had been forwarded to the Aspen - Special Program Unit

22   ("SPU") where Plaintiff had been sent for treatment.  (Response, #21, Exhibits, Grievance

23   Response dated 6/21/04.)  In appealing to Defendant Schriro, Plaintiff asserted that his

24   medical file must have been available for review as part of the decision to transfer him to

25   SPU, and further argued that SPU was not a licensed mental health unit and therefore that

26   was not an adequate response to his requests for treatment. (Response, #21, Exhibits,

27   Grievance Appeal at 2.)

28   / / /

1    Defendants seek to treat this appeal to Director Schriro as a grievance of the quality

2  of care at Aspen SPU, thereby divorcing it from Plaintiff's challenges to the lack of treatment

3  at Meadows. However, Defendants read Plaintiff's grievance appeal too narrowly.  Plaintiff

4  plainly was continuing to challenge his denial of treatment.  But, rather than treating his

5  appeal to the director as a trial *de novo*, he attacked the perceived errors in rejecting his

6  claims at the lower level.  Thus, his appeal did not ignore the fact that he had been transferred

7  to the SPU, but argued that he was still not being treated because the SPU was not licensed

8  to provide mental health care.  (Response, #21, Exhibits, Grievance Appeal at 2.)  The

9  grievance form itself invites such a response.  It does not ask for an explanation of the

10 underlying facts, but only an explanation of the reasons why the inmate is "appealing the

11 decision."  (*Id.* at 1.)

12    When she responded to the grievance appeal, it was apparently clear to Defendant

13 Schriro that Plaintiff was challenging the earlier treatment decisions.[1]  Her response did not

14 address the conditions at Aspen-SPU, but went back to the process leading up to Plaintiff's

15 transfer, stating: "Mental Health Staff made an appropriate referral to the mental health

16 treatment unit.  Your referral packet was processed according to standard procedure."

17 (Response, #21, Exhibits, Grievance Response dated 9/23/04.)  Thus, it is clear to the Court

18 that Plaintiff was continuing throughout the grievance process to challenge ADOC's denial

19 of mental health treatment, beginning at Meadows and continuing through the events

20 occurring during his pursuit of his grievance.

21    Plaintiff having exhausted his administrative remedies on his claims of being denied

22 mental health treatment, this portion of Defendants' motion must be denied.

23 **C.  ELEVENTH AMENDMENT IMMUNITY**

24    Defendants also argue that the Eleventh Amendment bars Plaintiff's claims for

25 monetary damages against the Defendants in their official capacity.  Plaintiff does not

26 respond to this claim.

27

28 _____
    [1] It appears that the response to Plaintiff may have actually been issued by a another ADOC employee on
    behalf of Defendant Schriro. *See* Response, #21, Exhibits, Grievance Response dated 9/23/04.

1    **Standard for Remaining Defenses** - Defendants' remaining defenses amount to a

2    motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to

3    Federal Rule of Civil Procedure 12 (b)(6).   A court reviewing a motion to dismiss a

4    complaint pursuant to Rule 12(b)(6) must accept all material factual allegations of the

5    complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Leatherman*

6    *v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

7    A claim may be dismissed only when it has been established "beyond doubt that the plaintiff

8    can prove no set of facts in support of his claim which would entitle him to relief." *Conley*

9    *v. Gibson,* 355 U.S. 41, 45-46 (1957).

10    **Monetary Claims in Official Capacity** - Although Defendants' couch their argument

11    in constitutional terms, it may be resolved on statutory grounds.  In their official capacities,

12    Defendants are not persons for purposes of a damages award under 42 U.S.C. § 1983. "[A]

13    suit against a state official in his official capacity is no different from a suit against the State

14    itself. Therefore, state officials sued in their official capacities are not 'persons' within the

15    meaning of § 1983." *Doe v. Lawrence Livermore Nat. Laboratory,* 131 F.3d 836, 839 (9th

16    Cir. 1997).   As such, under § 1983 these state defendants are subject, in their official

17    capacities, only to claims for prospective injunctive relief.  *Id.*

18    Accordingly, Defendants' motion will be granted on this issue, and Plaintiff's claims

19    under § 1983 for monetary relief against Defendants in their official capacities will be

20    dismissed with prejudice.

21    **D.  SUITS UNDER THE ADA AND REHABILITATION ACT**

22    Defendants argue that the ADA and the Rehabilitation Act bar suits against persons

23    in their individual capacities.  Plaintiff does not respond to this argument.

24    In *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir.  2002), the Ninth Circuit  joined

25    the Fifth, Eight and Eleventh Circuits in holding "that a plaintiff cannot bring an action under

26    42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created

27

28

1   by Title II of the ADA or section 504 of the Rehabilitation Act." *Id.* at 1156.[2] Accordingly,

2   the Court must dismiss Plaintiff's claims under the ADA and the Rehabilitation Act against

3   Defendants in their individual capacities.

4   **E.  PRIOR PHYSICAL INJURY**

5          Finally, Defendants argue that Plaintiff cannot recover damages because he has not

6   shown physical injury, as required by 42 U.S.C. § 1997e(e), but has alleged only emotional

7   and psychological injuries. (Motion, #17 at 5.)  Plaintiff does not respond to this argument.

8          The Prison Litigation Reform Act provides, in pertinent part:

9                 No Federal civil action may be brought by a prisoner confined in a jail,
                  prison, or other correctional facility, for mental or emotional injury
10                suffered while in custody without a prior showing of physical injury.

11  42 U.S.C. § 1997e(e).  Thus, if any of Plaintiff's claims for compensatory damages fails to

12  allege a physical injury, it is subject to dismissal.

13         **Plaintiff's Allegations** - In analyzing the claims in Plaintiff's Complaint, the Court

14  is obligated to construe the document liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520

15  (1972) (per curiam) (pro se pleadings are liberally construed); *see also United States v. Ten*

16  *Thousand Dollars ($10,000.00) in U.S. Currency*, 860 F.2d 1511, 1513 (9th Cir.1988) ( "We

17  have consistently held in this circuit that courts should liberally construe the pleadings and

18  efforts of pro se litigants, particularly 'where highly technical requirements are involved.'")

19  (quoting *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir.1984)); Fed. R. Civ. P.  8(f) ("All

20  pleadings shall be construed as to do substantial justice.")

21         In Count II of his Complaint, Plaintiff alleges that he has "attempted suicide several

22  times" as a result of his lack of mental health treatment.  Because the four counts of

23  Plaintiff's Complaint all arise out of the same core facts, *i.e.* Plaintiff's pursuit of mental

24  health treatment, the Court reads the counts in *pari materia*.  *See David v. Sinclair Refining*

25

26         [2] The U.S. Supreme Court recently held that Congress had the power in the ADA to "abrogate state sovereign

27  immunity by authorizing private suits for damages against the States"  *U.S. v. Georgia*, 543 U.S. - - - , 126 S.Ct.  877,
    882 (2006).  However, as noted in *Vinson*, a plaintiff's  individual capacity claim "does not implicate the State's

28  sovereign immunity under either the ADA or the Rehabilitation Act."  *Vinson*,  288 F.3d at 1155.

1    *Co.,* 25 F.R.D. 190, 192 (S.D.N.Y. 1960) ("A complaint must be considered in its entirety

2    and not by separating and considering separately isolated words or paragraphs."). That is,

3    the Court reads each of Plaintiff's counts to include the allegation that suicide attempts have

4    resulted from the lack of mental health treatment. Moreover, the Court considers that

5    allegation to create the inference that there was some physical injury or trauma associated

6    with those attempts.

7         However, those physical injuries did not result from actions of Defendants, but rather

8    from Plaintiff's own conduct. Arguably, that conduct may have resulted from the lack of

9    treatment. However, it is not sufficient that Plaintiff's claimed mental and emotional injuries

10   may have resulted in associated physical ailments. *See Alonzo v. Sqyres,* 2002 WL 1880736

11   (N.D.Cal. Aug.9, 2002) (plaintiff taken to hospital for high blood pressure, brought on by

12   "gruesome psycholog[ical] harassment[ ]," has not suffered a prior physical injury);

13   *Ashann-Ra v. Com. of Va.,* 112 F.Supp.2d 559 (W.D.Va. 2000) (no prior physical injury

14   shown where emotional distress and sexual dysfunction were allegedly caused by the

15   emotional distress of having to shower in front of opposite gender); *but see Scarver v.*

16   *Litscher*, 371 F.Supp.2d 986, 997 (W.D.Wis. 2005) (discussing potential for finding physical

17   injury from self-inflicted harm and suicide attempts resulting from failure to provide mental

18   health treatment).

19        In *Todd v. Graves,* 217 F.Supp.2d 958 (S.D.Iowa 2002), the Court held that where

20   stress from a refusal to allow an inmate to visit his dying mother, which in turn caused

21   increased blood pressure, hypertension, dizziness, insomnia and loss of appetite, the prisoner

22   had not shown the requisite physical injury. In so holding, the Court noted that Plaintiff's

23   purported physical injuries "are all symptoms typically associated with people suffering

24   stress or mental distress. Prison itself is a stressful environment. If the symptoms alleged by

25   Todd were enough to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), very

26   few plaintiffs would be barred by the physical injury rule from seeking compensation on

27   claims for emotional distress." *Id.* at 960.

28   / / /

1   While certainly attempted suicide is a more drastic consequence than hypertension,

2   the intervening effect of Plaintiff's mental function between Defendants' action and

3   Plaintiff's physical injury, requires that the shield of 42 U.S.C. § 1997e(e) apply.

4   **<u>Effect of Failure to Allege Physical Injury</u>** - Because Plaintiff seeks compensatory

5   damages for his mental and emotional injuries, without the prerequisite physical injury, those

6   claims must be dismissed.  However, the PLRA's physical injury requirement only precludes

7   suits for compensatory damages. It does not preclude suits for injunctive relief or nominal

8   or punitive damages.  *Calhoun v. DeTella,* 319 F.3d 936, 940 (7th Cir. 2003).  Here, Plaintiff

9   seeks not only compensatory damages, but injunctive relief and punitive damages.

10  Accordingly, his claims need not be dismissed in their entirety, but only insofar as they seek

11  compensatory damages.

12  Moreover, where a plaintiff has failed to allege the requisite physical injury,

13  "dismissal without leave to amend is improper unless it is clear that the complaint could not

14  be saved by any amendment." *Jackson v. Carey,* 353 F.3d 750, 758 (9th Cir. 2003).  Further,

15  even a clearly barred claim is not subject to dismissal with prejudice.  "Because section

16  1997e(e) applies only to claims filed while an inmate is confined, it does not prevent a former

17  prisoner from filing after release a monetary damages claim for mental and emotional injury

18  suffered while confined, without a prior showing of physical injury. Accordingly, dismissal

19  under this statutory provision of a claim that is filed during confinement should be without

20  prejudice to re-filing the claim if and when the plaintiff is released." *Harris v. Garner*, 216

21  F.3d 970, 979-980 (11th Cir. 2000).  Accordingly, Plaintiff's compensatory damages claims

22  must be dismissed without prejudice.

23  **IT IS THEREFORE ORDERED** that  Defendants Greeley and Schriro's Motion to

24  Dismiss, filed January 4, 2006 (#17) is **GRANTED** in part, as provided hereinafter.

25  **IT IS FURTHER ORDERED** that Plaintiff's  claims under 42 U.S.C. § 1983 for

26  monetary relief against Defendants in their official capacities are **DISMISSED WITH**

27  **PREJUDICE**.

28

1    **IT IS FURTHER ORDERED** that Plaintiff's claims under the ADA and the

2  Rehabilitation Act against Defendants in their individual capacities are **DISMISSED WITH**

3  **PREJUDICE.**

4    **IT IS FURTHER ORDERED** that Plaintiff's claims for compensatory damages are

5  **DISMISSED WITHOUT PREJUDICE**.

6    **IT IS FURTHER ORDERED** granting Plaintiff twenty days from the filing of this

7  Order to file a motion for leave to amend his Complaint to properly allege claims for

8  compensatory damages with the requisite physical injury.

9    DATED this 21st day of July, 2006.

10

11

12                        Stephen M. McNamee
                          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28